IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM DRAKE, et al.,

      **Plaintiffs,**

                                   Civil Action No. 2:09-cv-824
vs.                               Judge Sargus
                                   Magistrate Judge King

**CHARLES HOWLAND, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion for Judgment on the Pleadings. (Doc. 18.) For the reasons that follow, the motion is **GRANTED**.

**I.**

Brandon Drake, and his parents William and Angie (collectively "Plaintiffs"), bring claims of malicious prosecution against Charles S. Howland ("Howland"), the Morrow Country, Ohio, Prosecuting Attorney pursuant to 42 U.S.C. § 1983 and Ohio law. Additionally, Plaintiffs have filed a claim against Howland for intentional infliction of emotional distress. Finally, Plaintiffs bring their state law claims against Morrow County and the Morrow County Commissioners, the alleged employers of Howland, under a theory of respondeat superior.

The claims originated in the prosecution by Howland of then ten-year-old Brandon Drake for unlawful sexual contact with a minor child. According to the Plaintiffs' complaint, on or about August 15, 2007, an allegation arose that Brandon had had unlawful sexual contact with his five year old cousin sometime earlier that month. (Compl. ¶ 7.) A Children's Services

investigator interviewed Brandon's alleged victim and issued a report on October 4, 2007, indicating that sexual abuse had occurred. (Compl. ¶ 13.) Nonetheless, the agency recommended counseling rather than prosecution and that any contact between Brandon and the victim be supervised. (Compl. ¶ 13.)

On September 10, 2007, the mother of Brandon's alleged victim filed a complaint against Brandon with the Marrow County Sheriff for the alleged sexual contact. (Compl. ¶ 14.) Detective Stoney Hall of the Marrow County Sheriff's Office interviewed Brandon and subsequently made a recommendation to Howland that no charges be brought. (Compl. ¶ 15.) Nonetheless, on December 20, 2007, Howland charged Brandon with Gross Sexual Imposition, a Third Degree Felony, in the Juvenile Division of the Morrow County Court of Common Pleas. (Compl. ¶ 18.) Howland personally signed the criminal complaint, which only included biographical information of Brandon, the name and address of his guardians, the alleged offence and relevant criminal statute, and the date of the alleged offense. (*See* Defs.' Reply Pls.' Resp. Opp'n Mot. J. Pleadings, Ex. A.) Brandon entered a formal denial of the criminal charges filed against him. (Compl. ¶ 20.) On December 31, 2007, Children's Services representatives issued a revised report that found the claim of sexual abuse to be "unsubstantiated." (Compl. ¶ 19.)

A Magistrate Judge of the Juvenile Court ordered a psychosexual evaluation of Brandon Drake. The subsequent report indicated that it was unlikely that Brandon could have committed the sexual assault, given that he lacked the experiential factors to do so. (Compl. ¶¶ 27-28.) On September 19, 2008, the Magistrate dismissed the case against Brandon with prejudice. (Compl. ¶ 20.) Plaintiffs filed the instant action claiming malicious prosecution and Defendants now move for judgment on the pleadings.

2

## II.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973). Here, Defendants assert that despite the allegations of Plaintiffs' complaint, they are entitled to judgment because Plaintiffs' federal claim against Howland is barred by the doctrine of absolute prosecutorial immunity.

## III.

### A.

Howland is the sole individual among Defendants who is being sued pursuant to 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Section 1983 itself creates no substantive rights, but merely provides a mechanism for aggrieved persons to obtain a remedy for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional

3

rights. *See Barrett v. Steubenville City Sch.*, 388 F.3d 967, 971 (6th Cir. 2004); *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998); *United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir. 1992).

Absolute prosecutorial immunity from damage suits under § 1983 is derived from the common law judicial immunity for judges that has been extended to prosecutors "when [they] act[] within the scope of [their] prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). However, all acts of a prosecutor are not entitled to absolute immunity; a "functional approach" is used to determine the nature of the function performed. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). In the Sixth Circuit, "the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997)(quoting *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993)). Prosecutors are entitled to absolute immunity for actions that are part of the prosecutorial or judicial phase of the criminal process, such as deciding to initiate a prosecution, *Ireland*, 113 F.3d at 1446 ("prosecutor's decision to file a criminal complaint . . . fall[s] squarely within the aegis of absolute prosecutorial immunity"), but "are not absolutely immune when they perform administrative, investigative, or other functions." *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000). For instance, the Sixth Circuit has held that "when a prosecutor or other official switches from presenting the charging document to vouching personally for the truth of the contents of the document, . . . the protection afforded by absolute immunity must give way to a qualified immunity inquiry." *Ireland*, 113 F.3d at 1447.

The Supreme Court's decision in *Kalina v. Fletcher*, 522 U.S. 118 (1997), is illustrative

4

of the functional approach to evaluating absolute immunity. In *Kalina*, the Court held that a prosecutor was absolutely immune from suit for the filing an unsworn information charging Fletcher with burglary, see id. at 129, but was not absolutely immune for the simultaneous filing of an affidavit, which was signed by the prosecutor herself under penalty of perjury, accompanying an application for an arrest warrant. *Id.* at 131. The affidavit contained two factually inaccurate statements. *Id.* at 121. In holding that absolute immunity did not protect the prosecutor's submission of the affidavit from suite under § 1983, the Court likened the prosecutor's action to that of a complaining witness, and stated that:

> [t]estifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required "Oath or affirmation" is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.

*Id.* at 130-31.

At issue then in the instant case is whether Howland's prosecution of Brandon Drake can be characterized as having been done in the judicial phase of the case or was a merely administrative or investigatory action. Plaintiffs insist that absolute prosecutorial immunity does not shield Howland from their § 1983 claim because the swearing to and signing of the criminal complaint against Brandon Drake was an act of a witness, not a prosecutor. Instead, according to Plaintiffs, Howland was functioning as an investigator alleging facts, not a prosecutor bringing charges.

It is true that Howland did swear to the contents of the criminal complaint against Brandon. (*See* Defs.' Reply Pls.' Resp. Opp'n Mot. J. Pleadings, Ex. A.) Further, the Ohio

5

Rules of Juvenile Procedure require complaints to be made under oath and allow any person to file them. *See* OHIO R. JUVENILE P. 10. Accordingly, a person other than Howland, such as a police officer, could presumably have filed the complaint, indicating that Howland's role in executing the document could be likened to that of a complaining witness not protected by absolute immunity. However, the essence of Plaintiffs' § 1983 claim is that impropriety lay in Howland's actual *decision* to file and then maintain criminal charges against Brandon in the face of allegedly conflicting evidence; a prosecutor's decision to bring and maintain charges is squarely within the doctrine of absolute prosecutorial immunity. In this regard, Plaintiffs' complaint does not allege anything improper about the actual criminal complaint, or list this document as the source of the alleged injuries. Nor does Plaintiffs' complaint allege any involvement on Howland's part in activities, such as preliminary investigations, that would potentially be beyond the scope of absolute immunity. To the contrary, the complaint alleges that Howland did not sufficiently investigate the matter. (Compl. ¶ 33.)

Plaintiffs' reliance on *Buckley* for the proposition that the presence of probable cause is the key factor in establishing the protections of qualified immunity is misplaced. Plaintiffs quote *Buckley* for the proposition that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993). An accompanying footnote immediately after that statement clarifies that "[t]he reason that we grant [absolute immunity] for the latter function ([claims of] malicious prosecution) is that we have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not." *Id.* n.5. Plaintiffs' interpretation of the quoted language implies that if a prosecutor was subsequently not found to

6

have had probable cause to bring charges, the prosecutor would then be subject to suit for damages under § 1983. However, this interpretation would defeat the policy reason behind absolute immunity that prosecutors be able to make decisions regarding whom to prosecute free from the fear of liability to disgruntled defendants. *See Imbler v. Pachtman*, 424 U.S. 409, 422-24 (1976).

At the time the charges were filed, Howland had received a report from the Children's Services Agency indicating that sexual abuse at the hands of Brandon Drake had occurred. While it is true that the same report recommended that charges not be filed, a prosecutor is not restrained by the opinion of an investigator in determining whether a case merits prosecution. The report itself, indicating criminal conduct, became the basis for the decision. The pleadings contain no claim that Howland himself acted as an investigator. Instead, the pleadings indicate that he accepted the factual conclusions of an investigator, while rejecting the ultimate recommendation to defer charges, a decision vested exclusively in the authority of a prosecutor.

Howland is entitled to absolute immunity for his decision to initiate and subsequently maintain criminal charges. His actions were confined to the function of a prosecutor and did not consist of investigatory activities that would provide only qualified protection. While Howland signed the complaint, he did not offer personal, testamentary support of the charges.

For the above reasons, Plaintiffs' § 1983 claim against Howland is barred by the doctrine of absolute prosecutorial immunity and is dismissed.

**B.**

Plaintiffs also bring state law claims for malicious prosecution, intentional infliction of emotional distress, and loss of filial consortium. Because this Opinion and Order disposes of

7

Plaintiffs' sole federal claim, the Court declines to exercise supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiffs' state law claims are dismissed without prejudice. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001).

## IV.

Based on the foregoing, Defendants' Motion for Judgment on the Pleadings (Doc. 18) is **GRANTED**, Plaintiffs' federal claim is **DISMISSED WITH PREJUDICE**, and Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to close this matter.

**IT IS SO ORDERED**

9-2-2010
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

8